Elliot Gale (Bar #1119904)
egale@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Nancy Thompson

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Nancy Thompson<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Equifax Information Services, LLC; Credit One Bank, N.A.<br><br>　　　　　　Defendants. | CASE NO.   3:21-cv-00644<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act |

　　　　COMES NOW Plaintiff Nancy Thompson, an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).
2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt included and discharged in Plaintiff's Chapter 7 bankruptcy.

1

3. Defendant Credit One Bank, N.A. (hereinafter "Credit One") is reporting Plaintiff's account as a collections and past-due account despite being included and discharged in Plaintiff's chapter 7 bankruptcy.
4. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.
5. Plaintiff's credits score has been adversely impacted by the reporting.
6. Plaintiff's credit reports have been disseminated to third parties since the entry of her discharge and Plaintiff has been unable to obtain favorable interest rates as a result of the reporting by Credit One.
7. Credit One updated its reporting months after entry of Plaintiff's chapter 7 discharge, confirming that it treated the account as past-due rather than subject to Plaintiff's chapter 7 discharge.
8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDCREDIT ONETION & VENUE

9. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.
10. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681
11. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).
12. Plaintiff is a resident of the State of Wisconsin and resides within this judicial district.

## GENERAL ALLEGATIONS

13. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 7 bankruptcy filing or had notice of Plaintiff's bankruptcy filing and discharge.
14. Plaintiff alleges that Credit One received notice of Plaintiff's chapter 7 filing or had reason to know of Plaintiff's bankruptcy filing and discharge.
15. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

16. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

17. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

18. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

19. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

20. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

21. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan.  FICO periodically updates its scoring models resulting in multiple FICO Score versions.

22. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

23. There are 28 FICO Scores that are commonly used by lenders.

24. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

25. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

26. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

27. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

28. Each of the five factors is weighted differently by FICO.

29. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

30. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments.  The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

31. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

32. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

33. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

34. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score.  Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the filing date to determine how long ago the bankruptcy took place.

//

//

### e-OSCAR

35. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

36. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

37. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

38. regarding a consumer's credit worthiness.

### Metro 2

39. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

40. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

41. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

42. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

43. The CDIA is *the* expert on accurate credit reporting. In support of her allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.

  e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

  f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

  g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

44. The CDIA's Metro 2 is accepted by all CRAs.

45. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

46. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

47. The three main credit bureaus helped draft the CRRG.

48. The CRRG is not readily available to the public. It can be purchased online for $229.45.

49. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

50. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

51. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

52. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

53. All three major CRAs are members of the CDIA

54. The CDIA is on record that they know, understand, and accept mortgages are generally non-dischargeable under 11 U.S.C. §1328(c)(1) and 11 U.S.C. § 1322(b)(5).

### Consumer Information Indicator

55. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

56. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

57. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

58. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

59. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

60. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

61. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

62. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

63. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

64. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

65. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

66. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiff's Bankruptcy Filing

67. Plaintiff filed for Chapter 7 bankruptcy protection on November 23, 2020 in order to discharge various debts and improve Plaintiff's credit worthiness and FICO Score.
68. Plaintiff received her Chapter 7 discharge on February 24, 2021.
69. On May 12, 2021 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors after entry of her discharge.
70. Plaintiff noticed several different trade lines on the May 12, 2021 credit report all reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.
71. An account with Credit One reported Plaintiff's account as in collections and past-due rather than included/discharged in bankruptcy.
72. In response, Plaintiff disputed the inaccurate Credit One tradeline via certified mail with Experian, Equifax, and TransUnion.
73. Plaintiff's dispute letters were received on July 27, 2021.
74. Plaintiff's dispute letter specifically put Defendant Credit One on notice that Plaintiff had filed for bankruptcy and that the account should not be listed as in collections or past-due.
75. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.
76. On August 30, 2021 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second credit report from Experian, TransUnion Equifax for the sole purpose to ensure Plaintiff's Credit One account had in fact been updated.
77. The Credit One account listed above had not been updated and was still appearing on Plaintiff's Equifax report and reporting the account was past-due rather than included/discharged in bankruptcy.

//

//

### Inaccuracy – Credit One

78. Plaintiff was frustrated to see that Defendant Credit One did not properly update the account but instead continued to report Plaintiff's account as being past-due.

79. Credit One's failure to update the account makes it appear as though Credit One is still owed money and can collect on the account.

80. There is no information regarding the Credit One that would inform potential lenders or anyone else viewing the credit report that the account has been included/discharged in bankruptcy.

81. Instead, Credit One's reporting makes it seem as if the debt is still outstanding and that Plaintiff is still liable for the account, despite Plaintiff receiving a bankruptcy discharge.

82. Therefore, it appears that Credit One can still collect against Plaintiff and that Plaintiff is ultimately responsible for the Credit One liability.

### Willfulness

83. This was not a negligent act by Defendant Credit One but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.

84. Credit One is not following industry standards and is instead reporting incorrect information with the hope that Plaintiff will make a payment on the account.

85. Once Credit One received Plaintiff's dispute rather than update the account to "discharged in bankruptcy" Credit One instead ignored the dispute and continued to report the inaccurate information.

86. Plaintiff believes the reporting of the inaccurate and misleading information was done by Credit One in order to have her make a payment on the account in order to have the negative information removed from her credit report.

87. Credit One confirmed the past-due notation as recently as June of 2021, nearly four months after entry of her discharge.

88. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Damages**

89. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code.
90. Plaintiff is frustrated and annoyed that her credit has not improved since the discharge of her chapter 7 bankruptcy as she believed the account with Credit One was discharged.
91. Plaintiff's anxiety and stress has increased significantly as she learned that Credit One was not acknowledging the bankruptcy discharge and believes that Credit One can still collect on the account.
92. Plaintiff's credit score has remained at a low level as a result of the Credit One reporting, preventing her from rebuilding her credit and impacting her ability to obtain a more favorable interest rate on extensions of credit.
93. The actions of Equifax and Credit One as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

<u>**FIRST CAUSE OF ACTION**</u>
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Equifax – Failure to Assure Credit Reporting Accuracy.**

94. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
95. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.
96. Had Equifax maintained reasonable procedures to assure maximum accuracy Equifax would never have allowed Defendant Credit One to report the account as described herein.

97. As a result of Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### Willfulness

98. The violations described herein by Equifax was willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

99. Equifax intentionally send consumer disputes to employees who do not live within the continental United States.

100. This is done intentionally to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

101. These employees for Defendant Equifax receive little to know training concerning how to accurately report consumer debt.

102. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

103. Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

104. Equifax has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

105. Equifax knew Plaintiff filed bankruptcy and received a discharge and yet somehow allowed Credit One to report inaccurately and obviously outside of recognized industry standards.

106. Given that Equifax helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Equifax knew that the Credit One account was not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

107. Consequently, Defendant Equifax is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

108. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants)

**Credit One – Failure to Reinvestigate.**

109. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

110. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

111. Defendant Credit One violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

112. The CRAs provided notice to Credit One that Plaintiff was disputing the inaccurate and misleading information, but Credit One failed to conduct a reasonable investigation of the information.

113. Based on Plaintiff's dispute, Credit One should have known its account was included in Plaintiff's Chapter 7 discharge.

114. The most basic investigation would include a simple review of well-established credit reporting industry standards.

115. Plaintiff alleges Credit One did not review well established industry standards for credit reporting.

116. If Credit One had reviewed such standards Credit One would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

117. Such an investigation would be unreasonable.

118. Plaintiff also alleges that Credit One did not investigate whether Plaintiff filed for bankruptcy and whether a discharge was entered, as the tradeline at issue makes no reference to a bankruptcy filing.
119. The lack of investigation is unreasonable.

**Equifax – Failure to Reinvestigate Disputed Information.**

120. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
121. After Plaintiff disputed the accounts mentioned above, Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC § 1681i-(a)1.
122. Equifax failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
123. Plaintiff alleges that Equifax has its own independent duty to conduct a reasonable investigation 15 USC § 1681i-(a)1.
124. Equifax is not a passive entity bound to report whatever information a data furnisher, such as Credit One, provides.
125. Plaintiff alleges that Equifax is readily familiar with Metro 2 guidelines and credit reporting industry standards given that Equifax helped draft said guidelines.
126. Given the aforementioned, Plaintiff alleges that Equifax can and does suppress inaccurate information from being reported when data furnishers provide inaccurate information.
127. Equifax can and does instruct data furnishers on how to properly report certain accounts from time to time upon request from the data furnisher.
128. Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that Credit One was not following credit reporting industry standards.
129. Equifax therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered and the error corrected.

130. Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Equifax general policy is to simply parrot whatever information a data-furnishers sends.

131. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**Equifax – Failure to Review and Consider All Relevant Information.**

132. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

133. Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

134. As a result of Equifax's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

135. The violations by Equifax were willful, rendering Equifax individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

136. In the alternative, Equifax was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

137. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**Equifax – Failure to Delete Disputed and Inaccurate Information.**

138. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

139. Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

140. As a result of Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

141. The violations by Equifax were willful, rendering Equifax individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

142. In the alternative, Equifax was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

143. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determine by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n,
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n,
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o,
5. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Defendants' policies and practices are

unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: October 13, 2021

**Gale, Angelo, Johnson, & Pruett, P.C.**
*/s/ Elliot Gale*
Elliot Gale
Attorney for Plaintiff